UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| DOUGLAS G., <br><br> Plaintiff, <br><br> vs. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security[1], <br><br> Defendant. | Case No.  1:20-CV-00514-REP <br><br> **MEMORANDUM DECISION AND ORDER** |

Pending is Petitioner Douglas G.'s Petition for Review (Dkt. 1) and an accompanying Brief in Support of Petition to Review (Dkt. 15) appealing the Social Security Administration's final decision finding him not disabled and denying his claim for disability insurance benefits. *See* Pet. for Rev. (Dkt. 1).  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## ADMINISTRATIVE PROCEEDINGS

Petitioner is a man in his early twenties with a history of autism spectrum disorder, anxiety disorder, depressive disorder, and obsessive-compulsive disorder.  AR[2] 15.  Petitioner's father is on disability.  AR 51.  On May 6, 2018, Petitioner filed an application for child's

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi will be substituted as the respondent in this suit.  Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g).

[2] Citations to "AR __" refer to the cited page of the Administrative Record (Dkt. 14).

**MEMORANDUM DECISION AND ORDER - 1**

insurance benefits,[3] based on his father's social security record, alleging that Petitioner became disabled before his eighteenth birthday. AR 13, 172.

The claim was denied initially and on reconsideration and Petitioner requested a hearing in front of an Administrative Law Judge ("ALJ"). AR 13. On March 4, 2020, the claim went to a hearing before Administrative Law Judge ("ALJ") Stephen Marchioro. *Id.* On April 30, 2020, the ALJ issued a decision that was unfavorable to Petitioner. AR 10-24.

Petitioner appealed this decision to the Appeals Council. The Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. AR 1-6.

Having exhausted his administrative remedies, Petitioner filed this case. Petitioner raises four points of error. First, Petitioner contends that the ALJ failed to provide clear and convincing reasons for rejecting his subjective symptom testimony. Pt.'s Br. at 12-14 (Dkt. 15). Second, Petitioner maintains that the ALJ improperly rejected the testimony of his mother. *Id.* at 14-16. Third, Petitioner argues that the ALJ erred in relying on the opinions of the consulting psychologists, Dr. Mack Stephenson, Dr. Martin Seidenfeld, and Dr. Allison Podczerwinsky. *Id.* at 16-20. Finally, Petitioner complains that the ALJ failed to provide a sufficiently detailed analysis of whether Petitioner's autism qualifies as presumptively disabling under Listing 12.10.[4] *Id.* at 5-12.

---

[3] The dependent, unmarried, adult children of individuals entitled to old-age or disability benefits are entitled to "child's benefits" if they can show that they have a disability that began before they became 22 years old. 20 C.F.R. § 404.350(a).

[4] These arguments are numbered differently in Petitioner's opening brief. For the purposes of this Memorandum Decision and Order, the Court adopts the order used by Respondent in the response brief and followed by Petitioner in the reply brief.

**MEMORANDUM DECISION AND ORDER - 2**

## **STANDARD OF REVIEW**

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance. *Trevizo*, 871 F.3d at 674. It "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable

**MEMORANDUM DECISION AND ORDER - 3**

weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## THE SEQUENTIAL PROCESS

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.[5]

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of his or her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration

---

[5] The same definition of "disability" and five-step sequential evaluation that govern eligibility for social security disability income ("SSDI") and supplemental security income ("SSI") govern eligibility for disabled child's insurance benefits. *See* 42 U.S.C. §§ 402(d) and 423(d); 20 C.F.R. § 404.1520(a)(1)-(2).

**MEMORANDUM DECISION AND ORDER - 4**

requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e).

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

**MEMORANDUM DECISION AND ORDER - 5**

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th Cir. 2014).  If the claimant can do such other work, he is not disabled; if the claimant cannot do other work and meets the duration requirement, he is disabled.

## THE ALJ'S FINDINGS

The ALJ found that Petitioner suffers from the following severe impairments: autism spectrum disorder, anxiety disorder, depressive disorder, and obsessive-compulsive disorder. AR 15.  The ALJ determined that these impairments affect Petitioner's ability to engage in work-related activities in a variety of manners, including that Petitioner is limited to "simple, routine tasks;" his work cannot require "more than minimal math and minimal reading or writing skills;" and he can only tolerate "occasional changes in the work setting" and "occasional interaction with the public." AR 17.  Petitioner has no past relevant work.  AR 22.  Based on the testimony of a vocational expert, the ALJ concluded that Petitioner's limitations would not prevent him from performing a range of work, including working as a hand bander, a janitor, and a food sorter.  AR 23.  The ALJ, therefore, found that Petitioner was not disabled.  AR 24.

## DISCUSSION

I.   Petitioner's Symptom Testimony

Petitioner's first claim of error on appeal relates to the ALJ's rejection of his symptom testimony.  Pt.'s Br. at 12 (Dkt. 15).  When evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-

**MEMORANDUM DECISION AND ORDER - 6**

36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991). Second, if such objective medical evidence exists, and the ALJ has not determined that the claimant is malingering, the ALJ must provide clear and convincing reasons before rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Id.*

Generalized findings will not satisfy this standard. The reasons an ALJ provides for rejecting a claimant's symptom testimony "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony . . ." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345-46). This requires that the ALJ "identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988)).

Here, Petitioner worked part-time for a few months over one summer break as a stocker at Savers. AR 40, 200. This job involved hanging up clothes and recycling books. AR 40. Petitioner eventually left the job due to school restarting. AR 202. When asked why he had not looked for work of any kind after graduating high school, Petitioner testified "because I sometimes lose focus and I have depression and anger problems and when I lose focus, I get some flashbacks of some things I've done in the past and then some things I do regret, then my depression and anger problem comes." AR 41.[6] The ALJ reasonably interpreted this testimony

---

[6] In an attempt to clarify this answer, Petitioner's counsel later asked Petitioner to explain what would keep him from working at Savers "eight hours a day, five a week." AR 44. Petitioner initially responded that he did not know and had not really thought about it, before once again pointing his anger and rage as a serious impediment. AR 44-45.

**MEMORANDUM DECISION AND ORDER - 7**

as a claim that Petitioner has such "difficulty concentrating and completing tasks" and experiences such frustration and anger that he cannot work full-time.  AR 18.

The ALJ credited this testimony in part, acknowledging that Petitioner had "impulsivity and anger problems" and agreeing that Petitioner had a moderate limitation in his ability to concentrate, persist, or maintain pace.  AR 16.  After considering all of the medical evidence, however, the ALJ rejected the conclusion that these issues would prevent Petitioner from engaging in any full-time employment.  AR 17-22.  In other words, the ALJ found that Petitioner's problems with sadness, depression, anger, and concentration, while significant, were not as severe as Petitioner alleges.  AR 18.

Petitioner contends the ALJ failed to provide sufficiently detailed reasons for this decision.  The Court is unpersuaded.  After the ALJ indicated that he did not find the Petitioner's allegations "entirely consistent" with the medical evidence, the ALJ conducted a multi-page analysis of the record, wherein the ALJ highlighted numerous pieces of evidence that showed Petitioner's concentration and emotional regulation were not as limited as he and his mother suggest.  AR 18-21.

For example, the ALJ cited to counseling records from the period of alleged disability showing that Petitioner was working on his communication skills and the management of his emotions.  AR 19 (citing AR 344, 346, 348, 367).  As the ALJ stressed, these records show that Petitioner was making improvements in developing coping skills, effectively communicating, managing his anger and emotions, and maintaining positive interpersonal relationships.  AR 19, 21; *see also* AR 369 (Petitioner "making great gains," "able to use his coping skills," and demonstrating better "interpersonal skills;" when faced with a "dreadful" ex-friend, Petitioner was able to manage his presence "very well"); AR 367 (Petitioner "doing well," "managing his

**MEMORANDUM DECISION AND ORDER - 8**

feelings and emotions in more positive ways," and "using coping skills"); AR 395 (Petitioner "doing really well," has "come a long way," and has "improved in his depression and his ability to manage his anger"); AR 421 (Petitioner having recent struggles with suicidal thoughts, but "doing better" with his social relationships).

The ALJ also noted that Petitioner's mental status examinations from this period, including those conducted by his counselors were largely normal, without documentation of disabling issues with mood, communication, or distraction. AR 19-21. For example, in September 2018, Petitioner was evaluated by consulting psychologist David Starr, Ph.D. AR 359-363. Dr. Starr found that Petitioner was "attentive and cooperative" during the assessment and that his mood was "neutral and his affect was variable, appropriate to his thought content." AR 362. Dr. Starr rated Petitioner's "interference in concentration and attention" as mild. *Id.* Finally, Dr. Starr concluded that Petitioner could pay attention, remember, and follow directions "for the most part." AR 363. The ALJ reasonably determined that this evaluation showed that Petitioner retained the capacity to perform simple work, contrary to his allegations. AR 19.

The ALJ found additional support for this conclusion in the mental status evaluations of Petitioner's own treatment providers. As the ALJ stressed, these evaluations consistently showed normal appearance, stable mood, appropriate affect, cooperative behavior, good eye contact, and alertness and orientation. AR 20-21 (citing AR 348, 367, 371, 382, 395, 397, 438, 442, 452, 456, 460, 465). In other words, Petitioner's mental status evaluations were largely "benign" without signs of disabling functional limitations. AR 20-21.

Taken together, these medical records constituted "clear and convincing" reasons for the ALJ to discount Petitioner's testimony. *See Carmickle v. Comm'r of Social Sec.*, 533 F.3d 1155,

**MEMORANDUM DECISION AND ORDER - 9**

1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.")

Petitioner's reported activities were also valid reasons for the ALJ to reject the extent of Petitioner's complaints. *Bray v. Comm'r of Social Sec.*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."); *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."). Specifically, Petitioner reported that he regularly enjoys playing interactive card games with friends at a card store. AR 42-43, 187, 344, 346. Petitioner testified that he plays these games for extended periods on Saturdays, from 11:00 a.m. until 9:00 p.m. AR 46. The Court agrees with the ALJ that the regularity with which Petitioner successfully engages in this activity indicates that Petitioner has the capacity to (i) productively interact with others and (ii) concentrate and perform simple tasks on a sustained basis. AR 19. This is directly inconsistent with Petitioner's claim that he cannot work at all because of issues with anger and lack of focus.

Petitioner's arguments to the contrary rest on an overly parsimonious reading of the ALJ's decision. Petitioner argues that because the ALJ did not repeatedly use the word "inconsistent" when discussing the above evidence and did not expressly connect this evidence with particular excerpts of Petitioner's testimony, the ALJ's discussion does not satisfy the clear and convincing standard. Pt.'s Br. at 13-14 (Dkt. 21). What the law requires, however, is specificity, not "magic words" or exhaustive tomes minutely dissecting Petitioner's testimony. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("Our cases do not require ALJs to

**MEMORANDUM DECISION AND ORDER - 10**

perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits.") and *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (rejecting the argument that an ALJ must use certain formulaic "incantations," such as "I reject Dr. Fox's opinion about the onset date because . . . "); *see also Treichler*, 775 F.3d at 1103 (an ALJ's analysis of a claimant's testimony "need not be extensive").  The touchstone for whether an ALJ has been sufficiently specific is whether the reviewing court can reasonably follow the ALJ's reasoning and provide meaningful judicial review.  *Treichler*, 775 F.3d at 1103.  The ALJ satisfied that standard by pointing to multiple and specific pieces of evidence undercutting Petitioner's claim to be too distractible and emotionally-impaired to work.

II.     The Testimony and Reports of Petitioner's Mother

Petitioner's second challenge on appeal is that the ALJ improperly rejected the testimony of his mother.  Pt.'s Br. at 14 (Dkt. 15).  At the hearing, Petitioner's mother testified that it would be "hard" for Petitioner to focus for a full eight hours, but that working "maybe four or five hours" a day "would be ideal."  AR 52.[7]

It is well-settled that such testimony – i.e., testimony from a claimant's family members regarding a claimant's symptoms or how an impairment affects the claimant's ability to work – "is competent evidence that the ALJ must take into account."  *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014).  Before rejecting such testimony, the ALJ must provide germane reasons to the witness.  *Id.*

---

[7] As Respondent notes, this testimony was inconsistent with the third-party function report Petitioner's mother signed.  Res.'s Br. at 7 (Dkt. 17).  In this report, Petitioner's mother asserted that Petitioner could only pay attention for 5-10 minutes.  AR 196.  While the ALJ's opinion documents this discrepancy, however, the ALJ did not rely on it to discredit Petitioner's mother.  AR 18.  The Court will not impute such reasoning to the ALJ.  *See Molina v. Astrue*, 674 F.3d 1104, 1120-1121 (9th Cir. 2012) ("it is the ALJ's prerogative to determine the credibility of witnesses").

**MEMORANDUM DECISION AND ORDER - 11**

Here, the ALJ fairly summarized the statements and testimony of Petitioner's mother and explicitly stated that he was considering this evidence. AR 18. The ALJ did not, however, provide witness-specific reasons for rejecting the testimony. This was an understandable, if easily avoidable, mistake. As Petitioner's own arguments acknowledge, Petitioner's mother has acted as an "advocate" for Petitioner during the disability application process. *See* Pt.'s Br. at 16 (Dkt. 15). Relevant here, Petitioner's mother signed and filled out various forms on Petitioner's behalf, including Petitioner's function report. AR 189. Petitioner's mother also submitted the exact same information, signed the same day, on her own third-party function report. AR 191-199. In other words, Petitioner's mother submitted the same information to the ALJ for Petitioner and for herself. *Compare* AR 183-189 *with* AR 191-199. This blurred the line between Petitioner's testimony and Petitioner's mother's testimony. The hearing did little to distinguish them. At the hearing, Petitioner and his mother testified consistently with each other, claiming that Petitioner's anger was his primary impediment to working and that he could not focus enough to work full-time. AR 41, 44, 50-52.

In these circumstances, it has long been the rule that an ALJ need not separately "discuss every witness's testimony on [an] individualized, witness-by-witness basis." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). When an ALJ gives legally sufficient reasons for rejecting testimony by one witness, "the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id.*; *see also Valentine v. Comm'r SSA*, 574 F.3d 685, 694 (9th Cir. 2009) (an ALJ who provides clear and convincing reasons for rejecting a claimant's subjective complaints may legally reject parallel statements by a lay witness for "the same reasons"). Here, for example, the ALJ could have said he was rejecting the testimony of Petitioner's mother for the same reason he found Petitioner's symptom testimony less than fully

**MEMORANDUM DECISION AND ORDER - 12**

credible. The ALJ's failure to include such a statement is not best practice. *Molina*, 674 F.3d at 1115 (lay witness testimony "cannot be disregarded without comment").

The Court does not agree with Petitioner, however, that this error was harmful. It is clear from the ALJ's decision that the ALJ considered the overlapping and matching testimony of Petitioner and his mother. AR 18. It is also abundantly clear from the ALJ's lengthy and well-supported discussion of Petitioner's credibility that the ALJ found this testimony inconsistent with the medical evidence and Petitioner's reports of daily activities. AR 18-22. In these circumstances, the Ninth Circuit has held that the failure to discuss the lay-witness statements of a family member will be harmless. *Molina*, 674 F.3d at 1122 (where a lay witness does not describe "any limitations beyond those" those already validly rejected by the ALJ in discussing the claimant's testimony, failure to discuss the lay witness statement does not alter the non-disability determination). The same reasoning applies here.

III.     The Medical Opinion Evidence

Petitioner's third argument on appeal is that the RFC was not supported by substantial evidence because the ALJ relied on and credited three medical opinions – the opinions of Dr. Mack Stephenson, Dr. Martin Seidenfeld, and Dr. Allison Podczerwinsky – that were not themselves supported by substantial evidence. Pt.'s Br. at 20 (Dkt. 15).[8]

This is a difficult challenge on which to prevail. Substantial evidence is not a high standard. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *see also Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (substantial evidence "must be more than a mere scintilla but may be

---

[8] In the reply brief, Petitioner raises several new challenges to the ALJ's treatment of the medical opinion evidence. For example, Petitioner raises a legal challenge to the ALJ's compliance with articulation requirements 20 C.F.R. § 416.920c. Pt.'s Rply at 6 (Dkt. 18). Petitioner has waived these challenges by failing to argue them in his opening brief. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

**MEMORANDUM DECISION AND ORDER - 13**

less than a preponderance"). In determining whether such evidence exists, the Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Id.* As long as the evidence rationally supports the ALJ's conclusions, these conclusions must be affirmed. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Here, the ALJ was not presented with any directly conflicting medical opinions regarding whether Petitioner can perform simple work. All total, the record contains medical opinions and assessments from five providers: (i) a September 17, 2018 psychological evaluation from consulting examiner David R. Starr, Ph.D., (ii) a September 18, 2018 opinion from state agency consultant Mack Stephenson, Ph.D., (iii) a January 18, 2019 opinion from state agency consultant Martin Seidenfeld, Ph.D., (iv) an October 5, 2018 psychological evaluation from provider, Becky Wolery, Psy.D., and (v) a March 19, 2020 opinion from consulting medical expert Allison Podczerwinsky, Psy.D. AR 360-363, 69-76, 83-90, 404-408, 481-491. Before issuing a final decision, the ALJ carefully summarized and discussed each of these opinions. AR 19-22.

Relevant here, none of the above opinions indicate that Petitioner is disabled or wholly unable to work. *Id.* While the ALJ considered some opinions more persuasive than others, the ALJ ultimately accepted all the opinions and incorporated the limitations documented in these opinions into the RFC. *Id.* For example, the ALJ noted that Dr. Starr's opinion was based on a single evaluation with no record review, but concluded this evaluation was consistent with the conclusion that Petitioner could complete simple work tasks with limited math demands. AR 19. Similarly, the ALJ recognized that Dr. Wolery's opinion only addressed Petitioner's functioning

**MEMORANDUM DECISION AND ORDER - 14**

in broad terms (rather in terms of work capacity), but he indicated that he was still incorporating these limitations into the RFC.[9] AR 20.

The ALJ found the more detailed opinions of the consulting experts – Dr. Stephenson, Dr. Seidenfeld, and Dr. Podczerwinsky – the most persuasive. AR 21-22. Each of these doctors reviewed the medical records and concluded Petitioner, while limited in certain areas, retains the ability to perform simple work. *Id.*

Petitioner has not and cannot show it was irrational to credit this evidence. Critically, the ALJ was faced with not one, but three, expert medical opinions stating Petitioner could work. Petitioner's challenge on appeal boils down to an argument that the ALJ should have rejected all of these consistent opinions based on the ALJ's own assessment of Petitioner's IEP testing and accommodations. Pt.'s Br. at 17-20 (Dkt. 15). This argument suffers from several flaws.

First, Petitioner relies heavily on an IEP and related testing from 2015, over a year and half before the alleged period of disability when Petitioner was still a minor. *Id.* at 17-18. While

---

[9] In the reply, Petitioner raises a challenge, for the first time, to the ALJ's interpretation of Dr. Wolery's psychological assessment. Pt.'s Rply at 7-8 (Dkt. 18). As discussed above, Petitioner has waived this challenge. *Arpin*, 261 F.3d at 919 (issues which are not specifically and distinctly argued and raised in a party's opening brief are waived). Even if he had not, it is generally the responsibility of the ALJ to "translat[e] and incorporate[e] clinical findings into a succinct RFC." *Rounds v. Comm'r SSA*, 807 F.3d 996, 1006 (9th Cir. 2015). As long as they are reasonable, such translations are entitled to deference. *Tommasetti*, 533 F.3d at 1038. Petitioner has not shown error under this standard. Petitioner reads Dr. Wolery's report as establishing that Petitioner cannot perform any employment, even simple employment, without the need for extra breaks and without being off-task more than 10% of the day. Pt.'s Rply at 7-8 (Dkt. 18). But Dr. Wolery's report is not this definitive. Dr. Wolery specifically noted that Petitioner's need for "[a]ccomodations may vary depending on the setting." AR 407. While Dr. Wolery provided several examples of accommodations Petitioner *may* request, Dr. Wolery never indicated *when* such accommodations would be necessary and never stated Petitioner would need all these accommodations to perform any work, including simple work, in any environment. *Id.* In these circumstances, the ALJ enjoys significant latitude in translating a doctor's recommendations into an RFC. *Rounds*, 807 F.3d at 1006 ("An ALJ may rationally rely on specific imperatives regarding a claimant's limitations, rather than recommendations.").

**MEMORANDUM DECISION AND ORDER - 15**

an ALJ could have found these records relevant, it is not unreasonable for the ALJ to concentrate on and favor the records documenting Petitioner's functioning during the period of alleged disability, after Petitioner had matured and completed more schooling – for example, Dr. Starr's evaluation and Petitioner's counseling records.  *See Ahearn*, 988 F.3d at 1118 (holding that an ALJ did not err in giving limited weight to the "remote" assessment of an examining psychologist because "[m]edical opinions that predate the alleged onset of disability are of limited relevance").  This is especially true in cases like this one where the ALJ found that Petitioner's functioning had improved as he aged and received treatment.  AR 21.

Second, Petitioner suggests that the Court and the ALJ should credit Petitioner's reading of his 2018 IEP over the opinions of Dr. Stephenson and Dr. Seidenfeld because these two doctors did not have access to the 2018 IEP records when they issued their opinions.  Pt.'s Br. at 18 (Dkt. 15).  This argument ignores that all three doctors reviewed Petitioner's earlier IEPs.  AR 68, 81-82, 467, 486.  It also ignores that Dr. Podczerwinsky reviewed the 2018 IEP and still agreed with Dr. Stephenson and Dr. Seidenfeld that Petitioner was able to perform simple work.  AR 467, 486, 491.  In these circumstances, it was not unreasonable for the ALJ to rely on the combined expertise of the doctors rather than his own lay interpretation of how Petitioner's school accommodations and testing would translate to work limitations.

Finally, the 2018 IEP, which was issued during the period of alleged disability, does not paint as dire a picture of Petitioner's functioning as he suggests.  Petitioner emphasizes that the testing associated with this IEP revealed that Petitioner's reading, writing, and math skills are far below average. Pt.'s Br. at 17-18 (Dkt. 15).  But the ALJ accommodated these limitations into the RFC, recognizing that Petitioner could only work in jobs requiring "no more than minimal math and minimal reading or writing skills."  AR 17.  To the extent Petitioner is arguing that this

**MEMORANDUM DECISION AND ORDER - 16**

testing is indicative of broader functional limitations that would keep Petitioner from engaging in simple, manual labor, the 2018 IEP does not support this conclusion. This IEP opines that Petitioner will need initial supports in "locating, applying and securing the right employment," but concludes that Petitioner "will likely be a successful and valuable employee." AR 243. This is not the type of evidence that renders the ALJ's reliance on the expert opinions unreasonable.

    IV.    <u>The ALJ's Assessment of Listing 12.10</u>

Petitioner's final argument on appeal is that the ALJ "failed to conduct any analysis" of Listing 12.10 – the listing for autism spectrum disorder. Pt.'s Br. at 5 (Dkt. 15). Like many of the mental health listings, Listing 12.10 requires the satisfaction of two criteria. First, a claimant must provide "medical documentation of both of the following:

1. Qualitative deficits in verbal communication, nonverbal communication, and social interaction; and

2. Significantly restricted, repetitive patterns of behavior, interests, or activities.

Listing 12.10(A).

Second, a claimant must show extreme limitation of one or a marked limitation of two of the "paragraph B" domains. These are four "broad" domains that an ALJ must consider when evaluating the severity of a mental health condition. 20 C.F.R. §§ 404.1520a(c). The domains are:

1. Understanding, remembering, or applying information;

2. Interacting with others;

3. Concentrating, persisting, or maintaining pace; and

4. Adapting or managing oneself.

*Id.*; *see also* Listing 12.10(B).

**MEMORANDUM DECISION AND ORDER - 17**

These requirements are "purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)). In essence, "[t]he listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Zebley*, 493 U.S. at 532 (emphasis in original; citations omitted). To meet a listing, an impairment "must meet *all* of the specified medical criteria." *Id.* at 530 (emphasis in original).

It is the claimant's burden to make this showing. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). In other words, it was Petitioner's burden to show that his functional limitations in the paragraph B domains are sufficiently grave. *Id.*

The ALJ found that Petitioner had not met this burden. Specifically, the ALJ found that while Petitioner had autism, Petitioner's mental health conditions only caused (i) *moderate* limitations in understanding, remembering, or applying information, (ii) *moderate* limitations interacting with others, (iii) *moderate* limitations with concentration, persistence, or pace, and (iv) *moderate* limitations adapting or managing oneself. AR 68. In other words, Petitioner's autism did not satisfy the paragraph B criteria for presumptive disability. *Id.*

Petitioner maintains that the ALJ's analysis should be reversed because the ALJ did not sufficiently evaluate the relevant evidence and only issued "boilerplate" findings. Pt.'s Br. at 6 (Dkt. 15). This argument is both factually and legally flawed. Contrary to Petitioner's position, the ALJ did not assert that Petitioner failed to satisfy the criteria for Listings 12.04 and 12.10 without any further explanation. *Compare* Pt.'s Br. at 6 (Dkt. 15) *with* AR 16. Under the Step Three heading, the ALJ provided a quick discussion of each of his paragraph B findings, with a

few citations to the record. AR 16. While this section of the decision does not contain a lengthy discussion of the evidence underlying these findings, this discussion is not absent from the opinion. It is simply in a different section.

Specifically, in explaining his Step Three findings, the ALJ noted that his findings were "further supported by [Petitioner's] history, evaluations, and mental status examinations" as "discussed in more detail below." *Id.* In other words, the ALJ incorporated his subsequent analysis of the medical evidence into his Step Three findings by reference. AR 16-17 (stressing that the RFC assessment "reflects the degree of limitation" found in the paragraph B analysis).

There is nothing erroneous about this approach. *See Ozolins v. Saul*, 849 F. App'x 682, 683 (9th Cir. 2021) (unpublished) ("Although the ALJ's explanation might have been more robust, her lengthy evaluation of the evidence elsewhere 'is an adequate statement of the foundations on which the ultimate factual conclusions are based.'") (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990)). An ALJ is required to discuss and evaluate evidence that supports his conclusions; he is not required to do so under any specific heading. *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001). Here, the ALJ thoroughly evaluated of the medical evidence and explained why he concluded that Petitioner's symptoms were not as severe as he claims. AR 18-22. As part of this analysis, the ALJ adopted the opinions of three medical experts who rated Petitioner's limitations in the four paragraph B domains as mild or moderate at most. AR 21-22; *see also* AR 70, 84, 487.

Petitioner's argument that the ALJ should have rejected these expert opinions and concluded that he is markedly limited in his ability to concentrate, persist, or maintain pace and in his ability to adopt and manage himself is simply a restatement of his attack on the ALJ's treatment of the medical opinion evidence. For the reasons already discussed, this attack fails.

**MEMORANDUM DECISION AND ORDER - 19**

The ALJ's decision to credit Dr. Stephenson, Dr. Seidenfeld, and Dr. Podczerwinsky was supported by substantial evidence. The opinions of these doctors in turn support the ALJ's Step Three findings. *See Tackett*, 180 F.3d at 1099-1100 (the ALJ reliance on the testimony of a medical expert constituted substantial evidence for the ALJ's decision that plaintiff did not meet the listing requirements).

## ORDER

Based on the foregoing, Petitioner's Petition for Review and the Brief in Support of Petition to Review (Dkts. 1 & 15) are **DENIED,** and the decision of the Commissioner is **AFFIRMED.**

DATED: March 29, 2022

Raymond E. Patricco
U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 20**